IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00963-NYW

NEIL STEWART, and
CAROLINE STEWART,

    Plaintiffs,

v.

JOHN I. WEST, and
JENNIFER HART,

    Defendants.

## ORDER ON MOTION TO DISMISS

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant Jennifer Hart's ("Defendant Hart" or "Ms. Hart") Fed. R. Civ. P. 12(b)(2) & 12(b)(6) Motion to Dismiss ("Motion to Dismiss" or "Motion"). [#20]. The Parties consented to have the undersigned Magistrate Judge preside over this action fully for all purposes. *See* [#27]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Having considered the Motion, the applicable case law, the entire docket, and having entertained oral argument at the September 5, 2018 Motion Hearing, the court **DENIES** the Motion to Dismiss for the reasons stated herein.

## BACKGROUND

The court draws the following facts from the Amended Complaint and presumes they are true for purposes of the instant Motion. Plaintiffs Neil and Caroline Stewart (collectively, "Plaintiffs" or the "Stewarts") bring this action against Defendants John West ("Mr. West") and Ms. Hart (collectively, "Defendants") in their individual capacities as well as in their capacities as

co-trustees of The Margaret E. Hart Trust, Dated September 10, 2008 ("Trust").[1] *See generally* [#19]. The dispute concerns a real estate transaction involving property located in Avon, Colorado (the "Property"). *See* [*id.* at ¶ 1]. Defendant West and his wife built the Property in 2000, lived at the Property, and owned the Property until about 2008 when they transferred ownership to the Trust. *See* [*id.* at ¶¶ 6–9].

Plaintiffs allege that the Trust listed the Property for sale in or around 2016, and that Defendant Hart "traveled to Colorado to help prepare the Property to be listed for sale, which preparations included cleaning up the Property." [*Id.* at ¶ 12]. About 2017 the Stewarts sought to purchase the Property. *See* [*id.* at ¶¶ 1, 2, 13]. On or about September 5, 2017, Defendants signed the Property Disclosure regarding the Property, *see* [#1-1], and indicated that they "did not know" whether the Property had any issues with moisture and/or water damage, roof leaks, roof damage, hazardous and/or biohazardous materials, or other environmental problems. *See* [#1-1; #19 at ¶ 14]. The Stewarts hired a roofer to inspect the Property's roof—the inspection revealed some repairs, but the roofer could not determine whether the repairs were for leakage or routine maintenance. *See* [*id.* at ¶ 16]. The Stewarts then inquired whether the roof had ever leaked or had any other problems given that leakage could have serious structural ramifications; Defendants responded through their real estate agent that the roof "never had any leaks or other problems." [*Id.* at ¶¶ 17–19]. An inspection of the Property did not reveal any water damage or mold contamination, though Plaintiffs allege they were unaware at the time that the Inspector could not access the attic because personal property obstructed the attic hatch. *See* [*id.* at ¶ 20].

---

[1] Plaintiffs invoke this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, given that they are citizens of Great Britain and Defendants are citizens of Oregon. *See* [#19 at ¶ 2–4]. Thus, for purposes of this action the court applies the substantive law of Colorado—the forum in which this District sits. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010).

Being unaware of any defects with the Property, and in reliance on Defendants' disclosures, the Stewarts purchased the Property. *See* [*id.* at ¶¶ 21–22; #1-2]. Ahead of closing Defendant Hart allegedly traveled to the Property to pack Defendant West's belongings and furniture and to clean the Property. [#19 at ¶ 24]. The Stewarts closed on the Property on or around October 20, 2017. [*Id.* at ¶ 25]. But at some point, following closing, Plaintiffs "discovered significant mold contamination throughout the [Property], including in the attic." [*Id.* at ¶ 26]. Plaintiffs further discovered an oscillating fan and roof vents in the attic, and that the roof had dealt with leakage in the past, prompting a roofing contractor to submit a proposal to Defendant West for repairs needed to the roof. *See* [*id.* at ¶¶ 26–28]. The Stewarts further allege that Defendant West had dealt with roof issues in the past. [*Id.* at 6].

Plaintiffs then initiated this action asserting claims for fraudulent nondisclosure[2] against Defendants in their individual and co-trustee capacities for allegedly concealing and failing to disclose the nature and extent of the roof issues and for breach of contract against Defendants in their capacities as co-trustees for alleged breach of the Real Estate Contract that obligated Defendants to "disclose to [the Stewarts] any latent defects actually known by Seller." *See* [#19 at ¶ 29–43; #1-2 at 13]. On June 1, 2018, Ms. Hart answered the Amended Complaint in her capacity as co-trustee of the Trust [#21], but moved to dismiss the fraudulent nondisclosure claim against her in her individual capacity. [#20]. She argues first that the court lacks personal

---

[2] Plaintiffs' Amended Complaint refers to this claim as fraudulent concealment, but their Response refers to this claim as fraudulent nondisclosure. *Compare* [#19 at 6] *with* [#24 at 3]. Though the two are often used interchangeably, "concealment suggests affirmative acts while nondisclosure connotes inaction despite a duty." *Cent. Masonry Corp. v. Bechtel Nat., Inc.*, 857 F. Supp. 2d 1160, 1164 (D. Colo. 2012). While the Amended Complaint could suggest either claim, the court concludes that it is more appropriately characterized as fraudulent nondisclosure, but under either the elements are essentially the same. *See Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002).

jurisdiction over her in her individual capacity because she has no connection to Colorado; second, if the court does have personal jurisdiction over her in her individual capacity, she personally owed no duty to disclose to Plaintiffs given her limited role as co-trustee. [*Id.* at 4]. The Stewarts have since responded [#24], Ms. Hart replied [#30], and the court entertained oral argument on the Motion to Dismiss on September 5, 2018 [#38]. The Motion is now ripe for disposition.

## LEGAL STANDARDS

### I. Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's personal jurisdiction over the named parties. Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of demonstrating that the court has personal jurisdiction over Ms. Hart. *See Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008). When, as here, the district court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "The plaintiff[s] may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The court's focus is upon Defendant Hart's relationship with the District of Colorado and this litigation; so long as it creates a substantial connection" with this District, even a single act can support jurisdiction. *Leachman Cattle of Colorado, LLC v. Am. Simmental Ass'n*, 66 F. Supp. 3d 1327, 1336 (D. Colo. 2014). In considering whether Ms. Hart has sufficient contacts with this District to support the court's exercise of personal jurisdiction, the court must accept all well pleaded facts, and must resolve any factual disputes in favor of Plaintiffs. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

## II. Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The court may also consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and if the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). Ultimately, the court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

## I. Personal Jurisdiction

"The requirement that a court have personal jurisdiction flows from the Due Process Clause. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter

of individual liberty." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (brackets, ellipses, and internal quotation marks omitted). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). "Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the [United States] Constitution's full extent. The personal jurisdiction analysis here is thus a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (internal case citations omitted).

"To exercise jurisdiction in harmony with due process, defendant[] must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (brackets and internal quotation marks omitted). The minimum contacts may give way to specific or general jurisdiction. *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). General jurisdiction exists when the defendant's contacts with the forum are "'so continuous and systematic as to render [it] essentially at home in the forum State.'" *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction exists when a defendant purposefully directs her activities to residents of the forum, and the cause of action arises out of those activities. *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007).

It is undisputed that the court does not have general jurisdiction over Ms. Hart and, thus, I focus on specific jurisdiction. To exercise specific jurisdiction over Ms. Hart Plaintiffs must make

6

a prima facie showing of Ms. Hart's contacts with the forum that are more than just "random, fortuitous, or attenuated", such that she should "reasonably anticipate being haled into court there." *Monge v. RG Petro-Mach. (Grp.) Co. Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012). The court must therefore examine the "quantity and quality" of Ms. Hart's contacts with Colorado and determine whether a nexus exists between those contacts and Plaintiffs' cause of action. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).

A.  **Minimum Contacts**

Beginning first with Ms. Hart's contacts with Colorado, the dispute here centers on whether Ms. Hart's dual-capacity requires the Stewarts to establish Ms. Hart's minimum contacts solely as an individual for the court to exercise personal jurisdiction over her individually. Ms. Hart argues in the affirmative, maintaining that her contacts were in her role as co-trustee only and, thus, the Stewarts fail to make a prima facie showing of the requisite minimum contacts in her individual capacity. *See* [#20 at 6–7; #30 at 5–8]. Plaintiffs counter that Ms. Hart personally participated in the alleged fraudulent nondisclosure, rendering her contacts with Colorado sufficient to confer personal jurisdiction over her in her individual as well as her co-trustee capacity. *See* [#24 at 3–7].[3] The Stewarts explain that because Ms. Hart can be personally liable for Plaintiffs' injury, regardless of her status as co-trustee, she has directed her activities to residents of the forum and her activities are the cause of Plaintiffs' action. *See* [*id.* at 7–15]. For the following reasons, I conclude that Plaintiffs make a prima facie showing of Ms. Hart's minimum contacts with Colorado in her individual capacity and that such contacts give rise to Plaintiffs' cause of action.

---

[3] In this regard, Plaintiffs first argue that Ms. Hart can be, and is, personally liable for the alleged fraudulent concealment. And although such arguments may "crystallize why Ms. Hart is subject to jurisdiction in Colorado", *see* [#24 at 3 n.1], this court must first "address [Ms. Hart's] personal jurisdiction argument before reaching the merits of the case." *OMI Holdings, Inc.*, 149 F.3d at 1090.

7

As an initial matter, the Parties do not cite, nor is this court aware of, any controlling precedent that is directly on point. In arguing that the Stewarts have not established Ms. Hart's minimum contacts with Colorado in her individual capacity, Ms. Hart relies on the unpublished opinion of *Ace Investors, LLC v. Rubin*, 494 F. App'x 856 (10th Cir. 2012). There the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") held that personal jurisdiction over the defendant as trustee of the specific trust at issue did not establish general or specific personal jurisdiction over her in her capacity as trustee of two unrelated trusts. *Id.* at 859 (noting the "court must focus on the particular capacity in which a party is being sued in determining whether it has personal jurisdiction."). Ms. Hart contends that the application of *Ace Investors* to this matter requires the Stewarts to plead jurisdictional contacts with the forum that are specific to her individual capacity. This proposition finds some support in the law that distinguishes between actions taken in official versus individual capacities in other circumstances. *See, e.g.*, *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.9 (10th Cir. 2006) (noting that the plaintiff failed to establish personal jurisdiction over the defendants in their personal capacities, because the plaintiff's § 1983 claims failed to include any allegations regarding the defendants' contacts with the forum in their personal capacities); *United States ex rel. Bibby v. Mortg. Inv'rs Corp.*, No. 1:12-CV-4020-AT, 2017 WL 8218294, at *9 (N.D. Ga. Sept. 8, 2017) (explaining, "other courts in other jurisdictions have also treated parties acting in their capacity as trustees as distinct from those same parties acting in their capacities as individuals." (discussing *Ace Investors, LLC*)); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 230 (D.D.C. 2007) (holding that the court did not have jurisdiction over certain defendants in their individual capacities, because they were all domiciled in another state and their only contacts with the forum were in their official capacities); *Steego Corp. v. Ravenal*, 830 F. Supp. 42, 50 (D. Mass. 1993) ("In determining whether a court has personal

8

jurisdiction over a party, it is necessary to determine jurisdiction as to the party in each capacity he or she is being sued.").

Plaintiffs, on the other hand, rely on the published opinion of *Rusakiewicz v. Lowe*, 556 F.3d 1095 (10th Cir. 2009). There the Tenth Circuit held that the district court had personal jurisdiction over the defendants in their individual capacities, because the plaintiffs alleged that the defendants, as officers of a corporation, supported and funded with corporate funds a prior lawsuit by an officer of the corporation against the plaintiffs. *Id.* at 1101–02. The Tenth Circuit found that the defendants' "personal acts as individuals in supporting and voting to fund the [prior] lawsuit" were sufficient contacts in the forum "by the defendants themselves," and that this was not a situation where the plaintiffs predicated jurisdiction over the defendants "on jurisdiction over the corporation itself." *Id.* at 1102–03 (ellipsis omitted). The Stewarts aver that this rationale applies here, such that Ms. Hart's personal participation in the alleged fraudulent nondisclosure establishes her individual minimum contacts, even if she was acting in her co-trustee capacity. Ms. Hart responds that *Rusakiewicz* is inapposite because Colorado law treats trustees and corporate officers differently, the law in this regard is unsettled, and "Plaintiffs are trying to use the Trust's contacts with Colorado to establish personal jurisdiction of the [sic] Ms. Hart." [#30 at 6–7 & n.1].

The court concludes that these two Tenth Circuit opinions can, and should, be read consonantly for the principle that a court cannot exercise personal jurisdiction over a defendant in her individual capacity merely by imputing to her the actions of a corporation or trust. Put another way, jurisdiction over the corporation or trust itself does not automatically confer jurisdiction over the corporation's employees or the trustees (*i.e.*, the no-imputed-contacts rule). *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with California are not

to be judged according to their employer's activities there."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him"). But an individual's actions taken as a trustee or corporate officer also does not automatically shield her from the court's exercise of personal jurisdiction (*i.e.*, the fiduciary shield doctrine). *Cf. Ten Mile Indus. Park v. W. Plains Serv.Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987); *see also Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1017–19 (10th Cir. 1990). Courts in this District that have considered the applicability of the fiduciary shield doctrine have not found support for its application in Colorado. *Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1166 (D. Colo. 2016) (citations omitted). *See also Newsome v. Gallacher,* 722 F.3d 1257, 1275 (10th Cir. 2013) (holding that the fiduciary shield doctrine is a matter of state law, and refraining from applying it when state law had not adopted it). Instead, under *Ace Investors*, *Rusakiewicz*, and Colorado state law, a court must consider the allegations of an individual's "personal acts as individuals" to determine whether it may exercise personal jurisdiction. *Rusakiewicz*, 556 F.3d at 1103–04. And this court respectfully disagrees that *Ace Investors* can be read to mean that a court cannot also consider actions taken by a person in her capacity as a trustee when analyzing whether personal jurisdiction exists over a trustee in her individual capacity.

Indeed, as argued by Plaintiffs' counsel during oral argument, under Colorado law, both trustees and corporate officers can be individually liable for torts committed personally in the course of their official duties. *Compare* Colo. Rev. Stat. § 15-16-306(2), *repealed by* 2018 Colo. Legis. Serv. Ch. 169 (S.B. 18-180), Colo. Rev. Stat. § 15-5-1010(2)[4] *with Q.E.R., Inc. v.*

---

[4] Colo. Rev. Stat. § 15-5-1010(2) becomes effective January 1, 2019. For clarity and consistency, the court cites to Colo. Rev. Stat. § 15-16-306(2) exclusively.

*Hickerson*, 880 F.2d 1178, 1182–83 (10th Cir. 1989) (explaining that Colorado imposes personal liability on corporate officers that actively participate in illegal acts of the corporation). The trustee statute specifically provides that "[a] trustee is personally liable for obligations arising from ownership or control of property of the trust estate or for torts committed in the course of administration of the trust estate only if he is personally at fault." Colo. Rev. Stat. § 15-16-306(2). Thus, Plaintiffs must do more than simply impute the Trust's contacts to Ms. Hart in her individual capacity; they must instead establish that Ms. Hart was a "primary participant in the activities" forming the basis of jurisdiction. *See Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996); *cf. Arocho v. Nafziger*, 367 F. App'x 942, 948–49 (10th Cir. 2010) (explaining that acts taken by federal officers in their official capacity are relevant to establishing jurisdiction over the federal officers in their individual capacities, because the essence of a *Bivens* suit is holding a federal officer individually liable for constitutional violations arising out of her *official* duties). And the holding of the *Ace Investors* court does not require a different result, as the Tenth Circuit never reached the question of whether the defendant's conduct as a trustee could be imputed to her for the purposes of personal jurisdiction for a tort committed in the course of her duties as a trustee.[5]

The court now turns to considering Ms. Hart's personal contacts with this District. The Amended Complaint avers:

---

[5] Notably, *Ace Investors* considered a Utah statute that bars personal trustee liability for breach of contract if the trustee disclosed the fiduciary capacity in the contract, not whether Utah law allowed a trustee to be personally liable for torts committed while administering the trust. *Ace Investors*, 494 F. App'x. at 859. If Plaintiffs directed their breach of contract claim at Defendants West and Hart in their individual, rather than co-trustee, capacity, then the holding of *Ace Investors* would be more analogous. *See* Colo. Rev. Stat. 15-16-306(1) (providing, "[u]nless otherwise provided in the contract, a trustee is not personally liable on contracts properly entered into in his fiduciary capacity in the course of administration of the trust estate unless he fails to reveal his representative capacity and identify the trust estate in the contract.").

11

- Ms. Hart was a co-trustee of the Trust that owned the Property in Avon, Colorado;
- Ms. Hart traveled to Colorado to help prepare the Property for sale;
- Ms. Hart signed the Property Disclosure and the Real Estate Contract as co-trustee; and
- Ms. Hart traveled to Colorado to help with closing and Defendant West's move.

[#19 at ¶¶ 1, 12, 14, 22, 24]. Ms. Hart largely corroborates these allegations, attesting that she periodically visited her mother in Colorado for vacation, served solely as co-trustee of the Trust and did not own property or conduct personal business in Colorado, and visited Colorado in her capacity as co-trustee to facilitate the sale of the Property. *See* [#20-1 at ¶ 11].

From these allegations, I conclude that Plaintiffs have sufficiently alleged Ms. Hart's participation in the alleged fraudulent nondisclosure sufficient to establish a prima facie showing of her minimum contacts with Colorado in her *individual* capacity for the purposes of personal jurisdiction. *See Scott v. Gurusamy*, No. 16-CV-02961-RM-MEH, 2017 WL 590291, at *4 (D. Colo. Feb. 14, 2017) (concluding that the defendant was subject to personal jurisdiction in Colorado, because he was a primary participant in the alleged fraudulent hiring scheme that formed the basis for the corporation's jurisdiction); *see also JD Parker Const., Inc. v. E. Equity Partners*, LLC, No. 08-cv-01392-LTB-MJW, 2009 WL 151491, at *3 (D. Colo. Jan. 22, 2009) (holding the defendant was subject to personal jurisdiction in Colorado because he was a primary participant in defrauding the plaintiff). The record reflects that Ms. Hart undertook the role of co-trustee of a Trust with an asset—the Property—clearly located in Colorado. While that allegation standing alone might be insufficient to confer personal jurisdiction, the Stewarts also allege that Ms. Hart knowingly concealed or failed to disclose the existence of the mold contamination and/or prior roof issues despite having knowledge "that the attic contained significant mold contamination and that the fans and vents were put in in order to mitigate the contamination" and "the Property's roof

had leaked in the past" [#19 at ¶¶ 30–31, 33]; that such an act was expressly aimed at Colorado—the location of the Property; and that Ms. Hart knew the brunt of the injury would be felt in Colorado given the Stewarts' interest in and purchase of the Property in Colorado. *See* [#19 at ¶¶ 1, 14, 17, 19, 21, 23, 26]. Taking these allegations as true as I must at this juncture, I conclude that Plaintiffs have sufficiently alleged that Ms. Hart purposefully directed her activities at the forum. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) ("In tort-based lawsuits such as this one, 'purposeful direction' has three elements: (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." (ellipses and quotation marks omitted)). To find otherwise would require a plaintiff to establish an independent basis for personal jurisdiction for a claim arising from the administration of a trust. And, as discussed below, such a conclusion simply does not comport with the statute. The court must now determine whether maintenance of personal jurisdiction over Ms. Hart in her individual capacity would be unreasonable.

### B. Traditional Notions of Fair Play and Substantial Justice

When a plaintiff establishes the defendant's minimum contacts with the forum, it is defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (internal quotation marks omitted). Courts consider several factors when making such an inquiry:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167 (10th Cir. 2011).

Ms. Hart argues that exercising jurisdiction over her personally in Colorado "will have an additional personal burden (specifically including the cost to defend claims made against her 1,000 miles from her home)[.]" [#30 at 7; #20-1 at ¶ 12 ("I currently have no reason to travel to Colorado. As a result, defending this matter in my personal capacity in Colorado would impose an unreasonable burden on me.")]. Ms. Hart further avers that Plaintiffs have not put forth any evidence to the contrary, but, again, it is Ms. Hart's burden to make a compelling case as to why maintenance of jurisdiction over her in her individual capacity would be unreasonable once Plaintiffs have established her minimum contacts. *Pro Axess, Inc.*, 428 F.3d at 1280. For the following reasons, I conclude that exercising personal jurisdiction over Ms. Hart in her individual capacity does not offend traditional notions of fair play and substantial justice.

First, while having to defend a lawsuit 1,000 miles from her home may burden Ms. Hart, *see Dipanfilo*, 671 F.3d at 1169 (finding that defending a suit in the United States "1,200 miles from Toronto [was] clearly a burden on [the defendant]."), it is also true that "in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road[,]'" *Dudnikov*, 514 F.3d at 1081. And aside from vaguely suggesting a financial burden, Ms. Hart offers no explanation as to how her defense in her individual capacity, as opposed to co-trustee capacity, "would be hindered by the territorial limits on the Colorado district court's power to subpoena relevant witnesses, or indeed hampered in any other significant way." *Id.* Indeed, Ms. Hart submitted herself to the jurisdiction of this court in her capacity as co-trustee, the claims against her in both capacities are identical, she has answered the Amended Complaint in her co-trustee capacity, and it appears that the same counsel will represent her in both capacities. *See Gurusamy*, 2017 WL 590291, at *6 (finding similar facts weighed against the defendant's alleged burden of litigating in Colorado). And to the extent Ms. Hart has concerns about

conducting discovery in Colorado, the court notes that this District's long-standing practice requires the parties to take depositions at a location convenient to the witness when a deponent resides at a substantial distance from the deposing party, even if that witness is also a party. *Metrex Research Corp. v. United States*, 151 F.R.D. 122, 125 (D. Colo. 1993).

Factors two through four also favor maintaining jurisdiction in this forum while the fifth factor favors neither party. Second, Colorado has an interest in resolving a dispute between the sellers and buyers of real property located within the state. Third and fourth, the Stewarts have an interest in pursuing their claims entirely in this District without having to initiate a potential parallel action against Ms. Hart in her individual capacity in a different forum, and, thus, the most efficient resolution of this controversy is in this District. Thus, exercising personal jurisdiction over Ms. Hart in Colorado in her individual capacity does not offend traditional notions of fair play and substantial justice, especially given the allegations that Ms. Hart directed certain actions towards Colorado.

Accordingly, the court **DENIES** the Motion to Dismiss on personal jurisdiction grounds. I now consider Ms. Hart's alternative argument that the Stewarts' fraudulent nondisclosure claim against her in her individual capacity must fail as a matter of law.

## II.     Fraudulent Nondisclosure

Under Colorado law, a fraudulent nondisclosure claim requires a plaintiff to "'demonstrate that the defendant failed to disclose a past or present fact that he or she had a duty to disclose, with intent to induce the plaintiff to take a course of action he or she would not otherwise have taken, and that plaintiff justifiably relied on the omission.'" *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1109 (10th Cir. 2009) (internal brackets and ellipsis omitted) (quoting *Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002)). The indispensable component of a

fraudulent nondisclosure claim is that the tortfeasor owed the plaintiff a duty to disclose material information yet neglected that duty. *See Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998) ("A defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that in equity or good conscience should be disclosed." (internal quotation marks and citation omitted)); *accord Sussman v. Stoner*, 143 F. Supp. 2d 1232, 1239 (D. Colo. 2001) (explaining that Colorado courts employ the RESTATEMENT (SECOND) OF TORTS § 551(2) in determining whether a duty to disclose existed). "The question of whether a duty exists is a question of law." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1163 (10th Cir. 2008) (internal quotation marks and citation omitted).

The Parties appear to agree that sellers of real property have a duty to disclose known latent defects to buyers of real property. *See In re Estate of Gattis*, 318 P.3d 549, 554–55 (Colo. App. 2013). The Parties also appear to agree that the "personally at fault" language in Colo. Rev. Stat. § 15-16-306(2) encompasses only intentional or negligent conduct. *Compare* [#20 at 11; #30 at 3–4] *with* [#24 at 4]. The Parties do, however, dispute whether Ms. Hart can be individually liable for the fraudulent nondisclosure given her position as co-trustee. Ms. Hart asserts that she was not the seller of the Property in her individual capacity; thus, the duty to disclose attached only to her co-trustee capacity. [#20 at 9; #30 at 5]. According to Ms. Hart, the Stewarts fail to allege sufficient facts from which a factfinder could conclude she owed such a duty in her individual capacity and then acted intentionally or negligently for purposes of § 15-16-306(2). *See* [#20 at 10–12; #30 at 2–5]. Plaintiffs respond that Ms. Hart can be, and is, liable for the fraudulent nondisclosure in her individual capacity for actions taken while discharging her duties as a trustee because she (1) personally participated in the alleged tortious conduct, much like corporate officers

16

can be personally liable for actively participating in the corporation's tortious conduct, and (2) intentionally failed to disclose the Property's known latent defects. *See* [#24 at 4–8].

To start, it is clear from the statutory text that Ms. Hart *cannot* be personally liable for torts committed during the administration of the Trust merely because of her position as co-trustee, but *can* become personally liable for torts committed while administering the trust if she is personally at fault. Colo. Rev. Stat. § 15-16-306(2). Ms. Hart, however, argues that her capacity as co-trustee insulates her from ever owing Plaintiffs any duty in her individual capacity unless there is a separate and distinct duty that runs from Ms. Hart to Plaintiffs. This argument contradicts the plain language of § 15-16-306(2). *See Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004) (explaining that courts will not interpret statutes in ways that lead to an illogical or absurd result). Nor does the court conclude that such an interpretation renders the statute illusory, because in the absence of intentional or negligent conduct a trustee would *not* be personally liable for torts committed during the administration of a trust. *See Haskett v. Villas at Desert Falls*, 90 Cal. App. 4th 864, 877–78 (Cal. Ct. App. 2001) (interpreting similar "personally at fault" language to mean that a trustee was not liable for torts committed in the administration of a trust unless the trustee acted intentionally or negligently or failed to act; and concluding that there was no evidence of intentional or negligent conduct sufficient to hold the trustee personally liable). Indeed, Plaintiffs' attorneys conceded at oral argument that if the facts demonstrate that Ms. Hart had no knowledge of the alleged mold and roofing issues she cannot be personally liable, even if Mr. West (her co-Defendant and co-trustee) had such knowledge. Thus, the issue for the court to decide on the instant Motion is whether the Stewarts have plausibly alleged Ms. Hart's intentional or negligent conduct. A failure in this regard is fatal to the Stewarts' fraudulent nondisclosure claim against Ms. Hart in her individual capacity.

As mentioned, the Stewarts maintain that Ms. Hart's capacity as co-trustee is analogous to a corporate officer who is liable for actively participating in the corporation's tortious conduct. *See* [#24 at 4]. According to the Stewarts, Ms. Hart personally participated in the fraudulent nondisclosure and "intentionally failed to disclose the [Property's] latent defects." [#24 at 5 (parentheses omitted)]. The Amended Complaint further alleges:

- Ms. Hart signed the Property Disclosure and indicated that she "did not know" of any mold contamination, water damage, or roof leakage issues;

- Ms. Hart, through her real estate agent, informed Plaintiffs that "the roof had never had any leaks or other problems.";

- Ms. Hart, on information and belief, knew of the mold contamination in the attic;

- Ms. Hart, on information and belief, knew of the roof leakage issues; and

- Ms. Hart knowingly failed to disclose the existence of mold and the roof leakage issues.

[#19 at ¶¶ 14, 19, 30–31, 32].

While a party cannot generally satisfy the heightened pleading standard of Rule 9 of the Federal Rules of Civil Procedure applicable to claims sounding in fraud by averring facts "upon information and belief," an exception exists for facts "peculiarly in the opposing party's knowledge" and allegations of an individual's knowledge may be alleged generally. *See Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992). At this juncture, I conclude that Plaintiffs' allegations plausibly allege Ms. Hart's intentional and/or negligent conduct, though admissible evidence beyond these sparse allegations will be necessary to reach trial. But whether the facts demonstrate that Ms. Hart had knowledge of the alleged mold (or had so little contact with the Property that she did not know of such issues) and can be "personally at fault" are questions that go to the merits of the fraudulent nondisclosure claim and are not appropriately resolved on the instant Motion.

*See Hesse v. McClintic*, 176 P.3d 759, 764 (Colo. 2008) (expressing that the existence of a duty is a question of law, whereas the breach of that duty is "ordinarily a question of fact for the jury."). Accordingly, the court **DENIES** the Motion to Dismiss on this ground as well.

## CONCLUSION

For the reasons stated herein, the court hereby **ORDERS** that:

(1) Ms. Hart's Motion to Dismiss [#20] is **DENIED**.

DATED: September 6, 2018          BY THE COURT:

                                             Nina Y. Wang
                                             United States Magistrate Judge